UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEPHEN E. SPELMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 13-01134 (RJL) |
| | ) | |
| JOHN M. McHUGH, | ) | |
| *as Secretary of the Army*, | ) | **FILED** |
| | ) | |
| Defendant. | ) | AUG 2 2 2014 |

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**
(August 2⁴, 2014) [Dkt. #23]

Plaintiff Stephen E. Spelman ("Spelman" or "plaintiff") filed this action against Dana K. Chipman—in his official capacity as The Judge Advocate General of the United States Army ("TJAG")—on July 25, 2013 alleging violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq. See* Complaint ("Compl.") [Dkt. #1]. On August 20, 2013, plaintiff amended his complaint,[1] substituting John M. McHugh—in his official capacity as the Secretary of the Army ("Secretary" or "defendant")—as the defendant in this case, and adding a claim for violation of plaintiff's constitutional right to due process. *See* Amended Complaint ("Am. Compl.") ¶¶ 16-17, 131-36 [Dkt. #15]. Now before the Court is defendant's Motion to Dismiss, in part, and for Summary Judgment. *See* Mot. Summ. J. [Dkt. #23]. Upon consideration of the parties' pleadings,

---

[1] Plaintiff's Amended Complaint was filed as a matter of right, as it was filed within 21 days of

1

relevant law, and the entire record in this case, the Court GRANTS defendant's motion for summary judgment.

## BACKGROUND

Plaintiff is an attorney licensed to practice in Massachusetts, Connecticut, and New York. *See* Am. Compl. ¶ 6. He currently resides and practices law in Massachusetts. *See* Am. Compl. ¶ 7. Plaintiff is also a member of the Army Retired Reserve. *See* Administrative Record ("AR") [Dkt. #33] at 55. Plaintiff enlisted in the Regular Army as a Private in 1982. *See* Am. Compl. ¶ 8. He attended law school from 1988 to 1991, during which time he served in the U.S. Army Reserve. *See* Am. Compl. ¶¶ 10–13. Plaintiff became a member of the Judge Advocate General's Corps (JAGC)[2] in 2000. *See* Am. Compl. ¶ 15.

On September 6, 2012, plaintiff pleaded guilty in a general court-martial to offenses related to an extramarital affair he had with a subordinate officer-attorney in 2008 and 2009 while they were stationed in Iraq. *See* at AR 7-9, 48-50. He was sentenced to sixty days confinement, ordered to forfeit $4,000 of pay per month for five months, and reprimanded for his conduct. *See* AR at 48-50. Following execution of his sentence, plaintiff elected reassignment to the Retired Reserve rather than separation for

---

TJAG filing his Motion to Dismiss under Rule 12. *See* Fed. R. Civ. P. 15(a)(1)(B).
[2] The JAGC is considered a "special branch" of the Army. *See* 10 U.S.C. § 3064(a)(2). In addition to TJAG, the JAGC consists of "commissioned officers of the Regular Army appointed therein; and . . . other members of the Army assigned thereto by the Secretary of the Army." 10 U.S.C. § 3072. Officer members of the JAGC are known as Judge Advocates. *See* 10 U.S.C. § 801(13)(A).

misconduct under Army Regulation 135-175. *See* AR at 55, 95-96. Plaintiff entered the Retired Reserve on February 1, 2013. *See* Am. Compl. ¶¶ 31-32. Prior to doing so, however, plaintiff—through his civilian law firm—notified each of his state bar licensing authorities and clients of his general court-martial conviction. *See* Am. Compl. ¶ 45.

On February 12, 2013, the Professional Responsibility Branch ("PRB") of the Office of the Judge Advocate General notified plaintiff that it had reviewed the allegations of professional misconduct that were the basis of plaintiff's court-martial conviction, and found that there was credible evidence to conclude that he had violated the Army's Rules of Professional Conduct for Lawyers. *See* AR at 57-59. Plaintiff was given an opportunity to respond to the allegations and was informed that TJAG would make the ultimate decision regarding disciplinary action. *See* AR at 57-59. In letters dated February 19 and March 5, 2013, plaintiff disputed the PRB's allegations of professional misconduct and contested TJAG's authority to discipline him further. *See* AR at 63-66.

On June 13, 2013, TJAG notified plaintiff of his intent to impose the following disciplinary actions against plaintiff for violating Rule 8.4 of the Army Rules of Professional Conduct for Lawyers: (1) withdrawal of plaintiff's certification under Article 27(b) of the Uniform Code of Military Justice ("UCMJ"); (2) indefinite suspension from practice before Army Courts (3) indefinite suspension from practice under TJAG; and (4) notification of plaintiff's state bars of the withdrawal and suspensions. *See* AR at

148-49. On July 25, 2013, plaintiff submitted a rebuttal, again arguing that TJAG lacked statutory and regulatory authority to take such disciplinary action against him given that he was no longer in the active Army. *See* AR at 158-69. That same day, plaintiff filed his complaint and motions for a TRO and preliminary injunction in this Court. *See* Motion for Temporary Restraining Order [Dkt. #2]; Motion for Preliminary Injunction [Dkt. #3].

On July 26, 2013, this Court declined to issue a TRO and set a date to hear argument on plaintiff's Motion for Preliminary Injunction.[3] On the same date, government counsel informed plaintiff that TJAG had already decided to take the disciplinary action outlined in the June 13, 2013 letter. *See* AR at 170-71. On August 5, 2013, however, TJAG temporarily suspended the disciplinary action and notification of plaintiff's bar licensing authorities pending this Court's ruling on plaintiff's Motion for Preliminary Injunction. *See* Def.'s Notice [Dkt. #6]. On November 2, 2013, this Court denied plaintiff's Motion for Preliminary Injunction, finding that plaintiff failed to establish that irreparable injury would likely occur from a denial of his motion. *See* Memorandum Opinion at 6 [Dkt. #18]. On January 8, 2014, defendant filed the instant Motion to Dismiss, in part, and for Summary Judgment.

## STANDARD OF REVIEW

Defendant moves for summary judgment pursuant to Federal Rule of Civil

---

[3] Oral argument was heard on plaintiff's Motion for Preliminary Injunction on August 20, 2013.

Procedure 56. Summary judgment is normally proper where the pleadings, stipulations, affidavits, and admissions in a case show that there is no genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This standard, however, does not apply in cases where a district court is reviewing a final agency action under the APA "because of the limited role of a court in reviewing the administrative record." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) (citing *Nat'l Wilderness Inst. v. U.S. Army Corps of Eng'rs*, Civ. No. 010273, 2005 WL 691775, at *7 (D.D.C. 2005)). A district court's review of agency action involves questions of law that may be resolved "based on the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977)); *see also Atl. Sea Island Grp. LLC v. Connaughton*, 592 F. Supp. 2d 1, 12 (D.D.C. 2008); *McDougal v. Widnall*, 20 F. Supp. 2d 78, 82 (D.D.C. 1998) ("This Court must review the decision of the [agency] through an examination of the administrative record of the proceedings before the [agency], rather than a *de novo* review of Plaintiff's claims.").

Reviewing courts must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001). When a district court applies the arbitrary and capricious standard, it "does not resolve factual issues, but

instead acts as an appellate court resolving a legal question." *Atl. Sea Island Grp. LLC*, 592 F. Supp. 2d at 12-13 (citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996)). The court must, however, determine whether the agency action was based upon consideration of relevant factors and whether there was a clear error of judgment or a failure to follow procedures required by law. *See Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989); *Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009). The Supreme Court has made clear that "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of an agency." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also MD Pharmaceutical, Inc. v. DEA*, 133 F.3d 8, 16 (D.C. Cir. 1998) ("We will not disturb the decision of an agency that has examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (internal quotation marks and citation omitted).

When the agency action at issue involves "the construction of an administrative regulation rather than a statute . . . deference is even more clearly in order." *Udall v. Tallman*, 380 U.S. 1, 16 (1965). "[T]he agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (internal quotation marks and citation omitted); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Gen. Carbon*

*Co. v. OSHRC*, 860 F.2d 479, 483 (D.C. Cir. 1988). In other words, courts "must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Thomas Jefferson Univ.*, 512 U.S. at 512 (internal quotation marks and citation omitted); *see also Rollins Envtl. Servs. (NJ) Inc. v. EPA*, 937 F.2d 649, 652 (D.C. Cir. 1991). Not surprisingly, the more complex a regulatory program is, the greater the deference owed. *See Thomas Jefferson Univ.*, 512 U.S. at 512.

## ANALYSIS

The discipline administered by TJAG in this case consists of: (1) withdrawal of plaintiff's certification under Article 27(b) of the Uniform Code of Military Justice; (2) indefinite suspension from practice before Army courts-martial and the U.S. Army Court of Criminal Appeals ("ACCA"); (3) indefinite suspension from performing Judge Advocate duties or practicing law in any capacity in any area of practice under the cognizance of TJAG; and (4) notification of plaintiff's state bar and other licensing authorities of the disciplinary action. *See* AR at 148-49. Plaintiff challenges the above discipline on four grounds. Plaintiff argues that TJAG lacks the statutory and regulatory authority to impose discipline on him as a member of the Retired Reserve. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss and for Summary Judgment ("Pl.'s Opp'n") at 8, 11 [Dkt. #26]; *see also* Am. Compl. at 20-21 (Counts I and II).

Plaintiff further argues that TJAG failed to comply with Army regulations while imposing the discipline. *See* Pl.'s Opp'n at 13-15; *see also* Am. Compl. at 23 (Count III). Finally, plaintiff argues that TJAG's imposition of discipline on him was a violation of plaintiff's constitutional right to due process. *See* Pl.'s Opp'n at 14-15; *see also* Am. Compl. at 23 (Count IV). Each of these arguments will be discussed in turn.

## I. Statutory Authority

The Judge Advocate General is an Army officer—and attorney—who is appointed by the President at the rank of Lieutenant General for a term of four years. *See* 10 U.S.C. § 3037(a). TJAG is responsible for—in addition to other responsibilities prescribed by law—serving as the legal adviser to the Secretary of the Army and all officers and agencies of the Department of the Army, and for directing the members of the JAGC in the performance of their duties. *See* 10 U.S.C. § 3037(c). The Army is made up of four components: "the Regular Army, the Army National Guard of the United States, the Army National Guard while in the service of the United States and the Army Reserve." 10 U.S.C. § 3062(c)(1). Moreover, the Army Reserve—as a subset of the Army—is comprised of three components: "a Ready Reserve, a Standby Reserve, and a Retired Reserve." 10 U.S.C. § 10141(a). Plaintiff is a member of the Retired Reserve.[4] *See*

---

[4] Members of the Retired Reserve "may be ordered to active duty by the Secretary of the [Army] at any time," 10 U.S.C. § 688(a), to "such duties as the Secretary considers necessary in the interests of national defense," 10 U.S.C. § 688(c), including "to augment support and training facilities, to relieve both Active Component or Ready Reserve members for other duties, or to accomplish operational missions as needed," Appendix to Defendant's Motion to Dismiss or For Summary Judgment ("Def. App.") at 52-53 [Dkt. #23-3] (Office of the Assistant Sec'y. of Def.

Am. Compl. ¶ 29. As Judge Advocates serving in any of the three Army Reserve components are still part of the Army, they remain subject to TJAG's authority to "direct [them] in the performance of their duties." 10 U.S.C. § 3037.

Following the imposition of his court-martial sentence, plaintiff elected to enter the Retired Reserve in lieu of separating from the Army. *See* Am. Compl. ¶ 29. This decision, of course, was totally voluntary. *See* Def. App. at 49 (U.S. Dep't of Defense Instr. 1215.06, E5.1.3.4., Uniform Reserve, Training, and Retirement Categories (Dec. 24, 2008)) ("Former members having completed 20 satisfactory years of service creditable for non-regular retirement, but *electing to be discharged* from the [Reserve Components], are not a part of the Retired Reserve and have no military status.") (emphasis added). Having done so, it strains credulity for plaintiff to now argue that he is no longer subject to the authority of TJAG—the officer tasked by Congress with directing Judge Advocates in the performance of their duties. *See* 10 U.S.C. § 3037.

Plaintiff's decision to enter the Retired Reserve—rather than separate from the Army—made him available for activation as a Judge Advocate *at any time*, *see* 10 U.S.C. § 688, and thereby subject to TJAG's authority under 10 U.S.C. § 3037. Retired Reserve "retain their status as Reserves, and are otherwise qualified" for duty. 10 U.S.C. § 10154(2). Any ruling stating that TJAG lacks the authority to ensure the qualifications of those in the Retired Reserve—who may be activated to serve as Judge

---

for Reserve Affairs, Reserve Components of the Armed Forces, at 13-14 (Sept. 2005)).

Advocates—would do major harm to the maintenance of an effective Retired Reserve and would be contrary to the statutory language of 10 U.S.C. § 10154. *See id.*

TJAG's statutory authority over plaintiff—and Judge Advocates generally—is further derived from the UCMJ. *See* 10 U.S.C. § 801 *et seq.* Pursuant to the UCMJ, TJAG is responsible for certifying Judge Advocates for practice before general courts-martial, *see* 10 U.S.C. § 827(b) ("Trial counsel or defense counsel detailed for a general court-martial . . . must be certified as competent to perform such duties by the Judge Advocate General."), and for practice before the ACCA, *see* 10 U.S.C. § 870(a) ("The Judge Advocate General shall detail in his office one or more commissioned officers as appellate Government counsel, and one or more commissioned officers as appellate defense counsel, who are qualified under section 827(b)(1) of this title."). Moreover, in the Manual for Courts-Martial ("MCM"), TJAG is entrusted with responsibility for the "professional supervision and discipline of military trial and appellate military judges, judge advocates, and other lawyers who practice in proceedings governed by the code and this Manual." Def. App. at 27 (Rule for Court-Martial ("R.C.M.") 109)).[5] That plaintiff is not currently serving as an active duty Judge

---

[5] R.C.M. 109(a) further states that:
> Rules of professional conduct promulgated pursuant to this rule may include sanctions for violations of such rules. Sanctions may include but are not limited to indefinite suspension from practice in courts-martial and in the Courts of Criminal Appeals. Such suspensions may only be imposed by the Judge Advocate General of the armed service of such courts. Prior to imposing any discipline under this rule, the subject of the proposed action must be provided notice and an opportunity to be heard.

Advocate is no consequence. As plaintiff is subject to activation at any time, it remains the duty of TJAG to ensure his fitness for duty should he be recalled. *See* 10 U.S.C. § 827(b); 10 U.S.C. § 870(a); 10 U.S.C. § 10154.

## II. Regulatory Authority

Effective June 1, 1992, TJAG promulgated Army Regulation 27-26; Rules of Professional Conduct for Lawyers. *See* Def. App. at 15-22 (U.S. Dep't of Army, Reg. 27-26, Rules of Professional Conduct for Lawyers (May 1, 1992) ("Army Reg. 27-26" or "Rules")). Army Reg. 27-26 "provides comprehensive rules governing the ethical conduct of Army lawyers, military and civilian, and, pursuant to RCM 109, Manual for Courts-Martial, of non-government lawyers appearing before Army tribunals." *See id.* at 17 (Army Reg. 27-26, Rule 1). By its own terms, Army Reg. 27-26 applies to all "Judge Advocates in the Active Army, the Army National Guard, *and the U.S. Army Reserve*." *Id.* at 19 (Army Reg. 27-26, Rule 8.5(b)) (emphasis added). Plaintiff's focus on the use of the term "Army Lawyer" in Rule 8.5—as a basis for excusing him from compliance with the Rules—is misplaced, as it fails to account for the broader jurisdictional statement contained in Rule 8.5(b). *See id.* (stating rules apply to all Army Judge Advocates).

As the Retired Reserve is a component of the U.S. Army Reserves, plaintiff—as a Judge Advocate in the Retired Reserve[6]—is clearly subject to the Rules of Professional

---

*Id.*
[6] Plaintiff maintained his status as a Judge Advocate when he transitioned to the Retired Reserve. *See* AR at 55, 96-97.

Conduct for Lawyers. *See* 10 U.S.C. § 10141. Moreover, because the Rules "presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question," plaintiff's move to the Retired Reserve does nothing to change the fact that he was unquestionably subject to the Rules at the time of his misconduct.[7] *See* Def. App. at 18 (Army Reg. 27-26, Rule 7(f)).

### III. Army Regulations

Plaintiff argues that TJAG failed to comply with Army regulations when he imposed discipline on plaintiff without an independent review of the case by a Senior Supervisory Judge Advocate ("SSJA"). Unfortunately for plaintiff, this argument also lacks merit. How so?

Army Regulation 27-1 "establishes procedures for processing alleged or suspected violations of the Army Rules of Professional Conduct for Lawyers . . . or other applicable ethical standards by [Judge Advocates], civilian attorneys subject to this regulation, or other attorneys who are subject to the disciplinary authority of TJAG pursuant to RCM 109." *See* Def. App. at 10 (U.S. Dep't of Army, Reg. 27-1, Judge Advocate Legal Services (September 13, 2011) ("Army Reg. 27-1"), ¶ 7-1(a)).[8] The Professional

---

[7] Plaintiff admitted to misconduct when he pleaded guilty in his general court-martial on September 6, 2012. *See* Am. Compl. ¶ 26; AR at 7-9, 48-50. Plaintiff is not challenging TJAG's judgment or discretion for imposing discipline on plaintiff, only his authority to do so, *see* Am. Compl. ¶ 113, and therefore there is no need for an in-depth discussion of how plaintiff's misconduct violated the Army's Rules of Professional Conduct for Lawyers.

[8] The Office of TJAG is the proponent of the regulation and therefore it "has the authority to

12

Responsibility Branch ("PRB") is responsible for overseeing these procedures, including making determinations regarding the necessity of preliminary screening inquiries ("PSI").[9] See id. at 10-11 (Army Reg. 27-1, ¶¶ 7-3(b)(1), (4)). Although PRB has the authority to "assume the case and take further action as deemed appropriate under the circumstances," SSJA may be tasked with the limited role of determining whether a PSI is complete. See id. at 12 (Army Reg. 27-1, ¶ 7-5(b)).

If the PRB elects to take action on the PSI, he will forward it to The Assistant Judge Advocate General ("TAJAG"),[10] who may then refer the case to TJAG for any further action.[11] See id. at 12 (Army Reg. 27-1, ¶¶ 7-6(a), (b)). Upon receiving the case, TJAG must consider whether there has been a "violation[] of professional ethical standards," and is not bound in that decision by "the findings or recommendations of the

---

approve exceptions or waivers to [the] regulation that are consistent with controlling law and regulations." Def. App. at 9 (Army Reg. 27-1, at p. i).

[9] A PSI is an initial informal investigation used for "determining whether the questioned conduct occurred and, if it did, whether it constituted a violation of the Army Rules of Professional Conduct for Lawyers." Def. App. at 11 (Army Reg. 27-1, ¶¶ 7-4(a), (b)). PSIs may be unnecessary when the alleged violation has been "thoroughly investigated under another procedure," such as a court-martial. Id. at 10-11 (Army Reg. 27-1, ¶¶ 7-3(b)(1), (4)). The necessity of a PSI in any given situation is within the sole discretion of the PRB. Id. When the PRB decides that a PSI is not required, it will usually forward the misconduct report to a SSJA for further action. See id. at 12 (Army Reg. 27-1, ¶ 7-5(b)(4)). The SSJA may then either (1) close the case, if the report concludes that no misconduct has occurred; (2) determine that counseling is appropriate, if only a minor or technical violation occurred; or (3) refer the case to TJAG, if more than a minor or technical violation occurred. See id. at 12 (Army Reg. 27-1, ¶ 7-5(a)).

[10] If the TAJAG is unavailable, the PRB may forward the PSI to an Assistant Judge Advocate General ("AJAG"). See Def. App. at 12 (Army Reg. 27-1, ¶ 7-6(b)).

[11] The subject of a PSI is notified both at the time the PRB decides to refer the case to the DJAG and when the case is referred to TJAG for further action. See Def. App. at 12 (Army Reg. 27-1, ¶ 7-6(a), (c)).

PSI officer, the senior supervisory JA, a subordinate within [the Office of TJAG] or the PRC." *See id.* at 13 (Army Reg. 27-1, ¶ 7-8(a)(2)). Nevertheless, "[b]efore reporting an attorney's conduct to his or her licensing authority . . . TJAG will advise the subject attorney of the contemplated action and give him or her not more than ten days to show cause why TJAG should not take such action." *Id.*

After plaintiff pleaded guilty to his general court-martial, PRB Attorney Advisor Kathryn Stone informed him by letter dated February 12, 2013 that the "thoroughly documented General Court-Martial case satisfies the requirements of a [PSI], the purpose of which is to assist in determining whether the questioned conduct occurred and, if it did, whether it constituted a violation of the Army Rules of Professional Conduct for Lawyers." AR at 57. Plaintiff was also informed that PRB had "assumed" the case[12] as there was "credible evidence" that he violated Rule 8.4(b) and (c) of the Army Rules of Professional Conduct for Lawyers. *See id.* at 57-58. On March 26, 2013, PRB provided its recommendation on plaintiff's discipline to TJAG. *See* AR at 89. TJAG—after reviewing the court-martial file, PRB's recommendations, and plaintiff's rebuttal materials—found that plaintiff had indeed violated Rules 8.4(b) and (c). *See* AR at 145-49.

Plaintiff now seeks to convince this Court that the Army failed to follow its own regulations in his disciplinary proceedings, simply because there was no independent

---

[12] Plaintiff's general court-martial case file—which "satisfie[d] the requirements of a

review of his court-martial file—which was being used in lieu of a PSI—by an SSJA prior to PRB assuming the case. *See* Am. Compl. ¶¶ 103-107. The primary role of an SSJA in the attorney disciplinary process consists of reviewing the completeness of PSIs and coordinating with PRB if further action is required. *See* Def. App. at 12 (Army Reg. 27-1, ¶ 7-5). However, because plaintiff's misconduct was extensively investigated[13] during his general court-martial—and documented in the court-martial file—there was no need to create a separate PSI, and therefore no need for an SSJA—independent of PRB—to certify the completeness of the report. *See* AR at 57; *see also* Def. App. at 12 (Army Reg. 27-1, ¶ 7-5).

The PRB's authority to assume misconduct cases from SSJA is clear, *see* Def. App. at 12 (Army Reg. 27-1, ¶ 7-5(b)), and in cases where there is "more than a minor or technical violation"—as is the case here—the "[SSJA] *will* refer the PSI report" to the PRB for further action. Def. App. at 12 (Army Reg. 27-1, ¶ 7-5(a)(3)) (emphasis added). Considering that PRB is the gatekeeper for all misconduct cases consisting of "more than a minor or technical violation," plaintiff's argument that he was *entitled*— under Army regulations—to an SSJA review of his court-martial files is meritless. Plaintiff was entitled to—and was afforded—"notice and an opportunity to comment" prior to TJAG imposing discipline, as required by Army regulations. Def. App. at 13 (Army

---

[PSI]"—was not independently certified by a SSJA. *See* AR at 57.
[13] "A PSI normally will not be conducted if the alleged or suspected violation . . . [h]as been thoroughly investigated under another procedure." Def. App. at 10-11 (Army Reg. 27-1,

15

Reg. 27-1, ¶ 7-8(a)(2)); *see also id.* at 27 (Rule 109(a)); AR at 63-66, 144. Plaintiff's disciplinary procedure comports with Army regulations, and thus his claim must fail.

## IV. Due Process

Plaintiff next argues that he is entitled to relief based on TJAG's alleged violation of procedural due process under the Fifth Amendment. *See* Am. Compl. ¶¶ 131-36. To properly bring a procedural due process claim, plaintiff must show that there was "(1) a deprivation; (2) of life, liberty, or property; (3) without due process of law." *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 319 (D.D.C. 2011) (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991). Thus, the first inquiry must be whether or not the plaintiff was deprived of any legally recognized liberty or property interest. *See Gen. Elec. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010). In order for a plaintiff to have a property interest in a benefit, he must show that he has "a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "Only after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process." *Gen. Elec.*, 610 F.3d at 117 (internal quotation marks and citation omitted).

Courts in this Circuit have repeatedly found that "[t]here is no protected property interest in continued military service." *Spadone v. McHugh*, 864 F. Supp. 2d 181, 189 (D.D.C. 2012) (citing *Wilhelm v. Caldera*, 90 F. Supp. 2d 3, 8 (D.D.C. 2000)); *see also*

---

¶ 7-3(b)).

*Knehans v. Alexander*, 566 F.2d 312, 314 (D.C. Cir. 1977) (holding plaintiff "had no constitutionally protected entitlement to continued active duty as a commissioned officer in the Army"); *Smith v. Harvey*, 541 F. Supp. 2d 8, 15 (D.D.C. 2008) (stating that there is "no constitutionally-protected property interest in continued military service"). Given that the law of our Circuit is so clear,[14] plaintiff has not sufficiently pled the elements of a Fifth Amendment due process violation and thus this claim must also fail.[15]

## CONCLUSION

Accordingly, for all the foregoing reasons, the Court GRANTS defendant's motion for summary judgment. An Order consistent with decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[14] Indeed, if there is no protected property or liberty interest in continued military service generally, there can certainly be no such interest in continued service in a *particular military occupation*. See *Partington v. Houck*, 840 F. Supp. 2d 236, 242 (D.D.C. 2012) ("Plaintiff has no cognizable liberty interest in the limited practice of law before naval courts.")14; *see also Wilhelm*, 90 F. Supp. 2d at 8 ("Plaintiff has no due process right to practice medicine in the U.S. Army."). The D.C. Circuit questioned (in dicta) the rationale behind the District Court's finding in *Partington*—that there was no protected property interest in continued service as a military lawyer. *See Partington v. Houck*, 723 F.3d 280, 287 (D.C. Cir. 2013). Nevertheless, the D.C. Circuit agreed with the District Court's judgment and affirmed the dismissal of plaintiff's Fifth Amendment due process claims. *See id.*

[15] Even assuming, *arguendo*, that plaintiff *had* identified the deprivation of a protected property or liberty interest; it would be of no consequence, as I find that plaintiff was afforded sufficient due process under the circumstances, as discussed more fully in Section III above.